# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FT. MYERS DIVISION

ROBERT WILLIAM ROY,

                Plaintiff,

v.                                                Case No. 2:23-cv-343-JRK

MARTIN J. O'MALLEY,
Commissioner of Social Security,[1]

                Defendant.

_____

## OPINION AND ORDER[2]

## I.   Status

Robert William Roy ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff's alleged inability to work is the result of a hernia operation, a bulging disc and other back issues, a dislocated clavicle, pinched nerves, hip issues, and

---

[1]     Mr. O'Malley was sworn in as Commissioner of the Social Security Administration on December 20, 2023. Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Mr. O'Malley should be substituted for Kilolo Kijakazi as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]     The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 11), filed July 18, 2023; Referral Order (Doc. No. 12), entered July 21, 2023.

knee issues. Transcript of Administrative Proceedings (Doc. No. 10; "Tr." or "administrative transcript"), filed July 14, 2023, at 98-99, 114, 127, 145, 274.[3]

Prior to the filing of the applications at issue in this appeal, Plaintiff on October 6, 2014 filed an application for DIB and on June 1, 2016 an application for SSI. <u>See</u> Tr. at 76. Those applications were denied initially and upon reconsideration. <u>See</u> Tr. at 76. Then, an Administrative Law Judge ("ALJ") issued a decision on September 23, 2016 finding Plaintiff was not disabled through the date of the decision. Tr. at 76-86. Plaintiff requested review of the decision and submitted a brief and some third-party correspondence in support of the request. Tr. at 95-96. The Appeals Council denied Plaintiff's request for review. Tr. at 91-94. Plaintiff did not appeal this final determination.

Later, Plaintiff protectively filed the instant DIB and SSI applications on March 14, 2018 and December 5, 2018 respectively, alleging a disability onset date of January 1, 2014 in the DIB application and December 1, 1989 in the SSI application. Tr. at 245-46 (DIB), 247-57 (SSI).[4] The applications were denied initially, Tr. at 113-23, 124, 172-75 (DIB), 98-112, 125, 176-79 (SSI), and upon reconsideration, Tr. at 144-58, 159, 180-86 (DIB), 126-43, 160, 187-93 (SSI).

---

[3]     Some of the cited documents are duplicated in the administrative transcript. Citations are to the first time a document appears.

[4]     The DIB application was actually filed on March 15, 2018. Tr. at 245. The SSI application was actually filed on December 20, 2018. Tr. at 247. The administrative transcript contains protective filing date of March 14, 2018 for the DIB application and December 5, 2018 for the SSI application. Tr. at 114, 145 (DIB), 98, 127 (SSI).

On July 16, 2020, an ALJ held a hearing,[5] during which the ALJ heard from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). See Tr. at 42-72. The ALJ issued a decision on July 24, 2020 finding Plaintiff not disabled through the date of the decision. Tr. at 15-36. As part of the decision, the ALJ denied Plaintiff's request to reopen the prior-filed applications. See Tr. at 16. Plaintiff sought review of the decision by the Appeals Council and submitted a brief in support of the request. Tr. at 4-5 (Appeals Council exhibit list and order), 239-41 (request for review), 335-36 (brief). On December 9, 2020, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, making the ALJ's decision the final decision of the Commissioner.

Plaintiff appealed the final decision to this Court on January 28, 2021. Complaint (Doc. No. 1), Case No. 2:21-cv-75-JES-NPM. On December 10, 2021, on motion of Defendant, the Court entered an Order reversing and remanding the matter for further administrative proceedings. Tr. at 743-44; see Tr. at 745 (Judgment). In particular, Defendant was instructed to obtain testimony from a VE "to clarify the effect of the assessed limitations on Plaintiff's occupational base," and to ensure certain requirements were met with respect to the VE's testimony. Tr. at 743-44. On remand, the Appeals Council on February 27, 2022

---

[5]     The hearing was held via telephone, with Plaintiff's consent, because of extraordinary circumstances caused by the earlier stages of the COVID-19 pandemic. Tr. at 45, 331.

entered an Order vacating the final decision and remanding the matter to an ALJ consistent with the Court's Order. Tr. at 750-51.

On June 22, 2022, the ALJ held a hearing, during which he heard from a VE.[6] Tr. at 695-706. On July 21, 2022, the ALJ issued a Decision finding Plaintiff not disabled through the date of the Decision. Tr. at 668-86.[7] Plaintiff requested review of the decision by the Appeals Council and submitted written exceptions to the Decision. Tr. at 621-22, 629, 636 (exhibit list and orders), 638-64 (exceptions and attachments). On March 29, 2023, the Appeals Council declined to assume jurisdiction, Tr. at 632-35. However, on April 14, 2023, the Appeals Council set aside its March 29, 2023 determination, considered in detail Plaintiff's written exceptions to the ALJ's Decision, and determined there was no reversible error on the part of the ALJ. Tr. at 624-27. Then again, on April 19, 2023, the Appeals Council set aside its April 14, 2023 determination to decline jurisdiction, again considered in detail Plaintiff's written exceptions to the ALJ's Decision, and determined there was no reversible error on the part

---

[6]     This hearing was also held via telephone with Plaintiff's consent. Tr. at 698. Plaintiff's counsel was "satisfied with [Plaintiff's] testimony" from the prior hearing "with regard to functionality," Tr. at 699, so the ALJ heard only from a VE at this hearing, Tr. at 699-705.

[7]     Two pages of the Decision are out of order in the administrative transcript. Page two of the Decision (although accurately marked "Page 2") appears before page one and was mistakenly numbered for administrative transcript purposes as Tr. at 668. Page one appears next and is mistakenly numbered Tr. at 669.

of the ALJ. Tr. at 617-20. The ALJ's Decision, therefore, became the final decision of the Commissioner. Tr. at 618.

On May 15, 2023, Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) by timely filing a Complaint (Doc. No. 1) seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff argues the ALJ erred in: 1) "not apply[ing] res judicata" and "fail[ing] to associate with the present record all of the medical evidence from the prior application[s]"; 2) "improperly fail[ing] to apply grid rule 201.10 to find [] Plaintiff disabled as of his 50th birthday"; 3) relying on the VE's testimony given the VE's reliance on SkillTRAN and also the ALJ's alleged failure to make required step-five findings; and 4) assessing a residual functional capacity ("RFC") that did not mirror an assessment given at the state-agency level. Plaintiff's Memorandum in Opposition to the Commissioner's Decision (Doc. No. 14; "Pl.'s Mem.") filed August 4, 2023, at 1-2; see id. at 8-11 (first issue), 11-14 (second issue), 14-21 (third issue), 21-22 (fourth issue). On October 6, 2023, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 18; "Def.'s Mem."), responding to Plaintiff's arguments. Then, Plaintiff on October 20, 2023 filed Plaintiff's Reply Brief (Doc. No. 20; "Reply").

After a thorough review of the entire record and consideration of the parties' respective arguments, the undersigned finds that the Commissioner's

final decision is due to be reversed and remanded for reconsideration at step five of whether Plaintiff can perform work that exists in significant numbers in the national economy. On remand, reevaluation of this issue may impact the Administration's consideration of the remaining issues on appeal. For this reason, the Court need not address the parties' arguments on those issues. See Jackson v. Bowen, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam) (declining to address certain issues because they were likely to be reconsidered on remand); Demenech v. Sec'y of the Dep't of Health & Human Servs., 913 F.2d 882, 884 (11th Cir. 1990) (per curiam) (concluding that certain arguments need not be addressed when the case would be remanded on other issues).

## II.   The ALJ's Decision

When determining whether an individual is disabled,[8] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past

---

[8]      "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. § 404.1520; <u>see also</u> <u>Simon v. Comm'r, Soc. Sec. Admin.</u>, 7 F.4th 1094, 1101-02 (11th Cir. 2021) (citations omitted); <u>Phillips v. Barnhart</u>, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. <u>See</u> Tr. at 673-86. At step one, the ALJ determined Plaintiff "has not engaged in substantial gainful activity since January 1, 2014, the alleged onset date." Tr. at 673 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: degenerative disc disease of the cervical and lumbar spines, mild left shoulder degenerative changes, status-post remote hernia repair with residual testicular epididymitis, attention deficit hyperactivity disorder (ADHD), neurocognitive disorder, anxiety, [and] depression." Tr. at 673 (emphasis and citation omitted). At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 674 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following RFC:

[Plaintiff can] lift/carry 20 pounds occasionally and 10 pounds frequently; sit for six hours in an eight hour workday; stand and/or

> walk for six hours in an eight hour workday; occasional climbing of ramps or stairs but no climbing of ladders, ropes, or scaffolds; frequent balancing, stooping, kneeling and crouching; no crawling; frequent overhead reaching with the left upper extremity; no exposure to hazardous machinery or unprotected heights; able to understand, remember, and carry out simple tasks while maintaining attention and concentration for two hours at a time before requiring a regularly scheduled break; low stress work defined as having only occasional decision-making and only occasional changes in the work setting; and occasional interaction with coworkers, supervisors, and the public.

Tr. at 676 (emphasis omitted).

At step four, the ALJ found that Plaintiff "is unable to perform any past relevant work" as a "Maintenance Worker." Tr. at 684 (some emphasis and citation omitted). At the fifth and final step of the sequential inquiry, after considering Plaintiff's age ("44 years old, which is defined as a younger individual . . . on the alleged disability onset date" with a subsequent "changed age category to closely approaching advanced age"), education ("limited education"), work experience, and RFC, the ALJ found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," Tr. at 684-85 (some emphasis omitted), such as "Marker," "Router," and "Checker (I)," Tr. at 685. The ALJ concluded Plaintiff "has not been under a disability . . . from January 1, 2014, through the date of th[e D]ecision." Tr. at 686 (emphasis and citation omitted).

### III.   Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Biestek v. Berryhill, 587 U.S. 97, 103 (2019); Samuels v. Acting Comm'r of Soc. Sec., 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.   Discussion

Plaintiff contends the ALJ erred at step five in relying on the VE's testimony about the number of jobs available in the national economy. Pl.'s Mem. at 14-21. According to Plaintiff, "the job numbers offered by the VE appear to be for some larger groups of jobs, and otherwise appear to be significantly overstated." Id. at 16.

At step five in the sequential inquiry, "the ALJ must determine if there is other work available in significant numbers in the national economy that the claimant has the ability to perform." Phillips, 357 F.3d at 1239.   To make this determination, the ALJ may pose a hypothetical question to a VE. See Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002) (citing Wolfe v. Chater, 86 F.3d 1072, 1077-78 (11th Cir. 1996)); see also Zimmer v. Comm'r of Soc. Sec., 211 F. App'x 819, 820 (11th Cir. 2006) (citing Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir.1999) ("An ALJ relies on the testimony of a [VE] to determine what level of skill the claimant achieved in his [or her] past work, whether the claimant has transferable skills, and whether the claimant can perform other jobs.")).   "In order for a [VE]'s testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."   Wilson, 284 F.3d at 1227 (citing Jones, 190 F.3d at 1229).   If there are "apparent conflicts" between a VE's testimony and the Dictionary of Occupational Titles ("DOT"), the ALJ must identify them, "ask the VE about

them, and explain how the conflict was resolved in the ALJ's . . . [D]ecision." <u>Washington v. Comm'r of Soc. Sec.</u>, 906 F.3d 1353, 1365 (11th Cir. 2018); <u>see also</u> SSR 00-4P, 2000 WL 1898704, at *2. The ALJ is required to "articulate specific jobs" that exist in the national economy "that the claimant can perform, and this finding must be supported by substantial evidence, not mere intuition or conjecture." <u>Allen v. Sullivan</u>, 880 F.2d 1200, 1202 (11th Cir. 1989) (citation omitted).

Here, the ALJ asked the VE about the jobs that can be performed by an individual with Plaintiff's age, education, and ultimate RFC. <u>See</u> Tr. at 701-02. The VE testified that Plaintiff can perform the jobs of "marker," with "approximately 300,000 in the national economy"; "router," with "approximately 52,000 in the national economy"; and "checker I," with "35,000 in the national economy." Tr. at 701-02. The VE confirmed that her testimony was consistent with the DOT. Tr. at 703. Then, Plaintiff's counsel asked for the "source of the job numbers," to which the VE replied that she "use[s] SkillTRAN." Tr. at 704. In the written Decision, the ALJ adopted the ALJ's testimony, finding that Plaintiff can perform "representative occupations such as" "Marker," "Router," and "Checker (I)." Tr. at 685. The ALJ did articulate the specific number of jobs available for each position as testified to by the VE, but the ALJ in making the ultimate step five findings, determined generally that

Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." Tr. at 686.

Challenging these findings, Plaintiff relies heavily on <u>Goode v. Comm'r of Soc. Sec.</u>, 966 F.3d 1277, 1282 (11th Cir. 2020) and <u>Viverette v. Comm'r of Soc. Sec.</u>, 13 F.4th 1309, 1318 (11th Cir. 2021). According to Plaintiff, the ALJ's Decision runs afoul of <u>Goode</u> because, similar to the situation in <u>Goode</u>, the "Checker I" jobs belong in SkillTRAN to a larger group of 33 different occupations: collectively, those 33 occupations account for 54,760 jobs, but the Checker I position only accounts for about 4,604 jobs. Pl.'s Mem. at 16-17 (citing Tr. at 852). Thus, Plaintiff argues the VE's testimony that 35,000 jobs are available is not accurate or supported. <u>Id.</u> Plaintiff points out other large discrepancies for the remaining two jobs (300,000 marker jobs as stated by the VE versus 136,785 as actually stated by SkillTRAN; 52,000 router jobs as stated by the VE versus 25,152 as actually stated by SkillTRAN). <u>Id.</u> at 18.

In <u>Goode</u>, the Eleventh Circuit was faced with a similar issue as the one presented here with the Checker I position: a standard occupational classification code relied upon by a VE that grouped many different DOT positions into one for purposes of job employment numbers. <u>Goode</u>, 966 F.3d at 1283-84. The Eleventh Circuit held that a VE's failure to take a step of "approximat[ing] how many of those are the specific job or jobs that [Plaintiff] can perform" was error necessitating remand. <u>Id.</u> at 1284-85. Later in <u>Viverette</u>,

when an ALJ "apparently treated . . . cumulatively" three different jobs "for purposes of the 'significant numbers' determination," the Eleventh Circuit was "hesitant to make any factual determinations about whether [two untainted jobs] exist in significant numbers in the national economy" after one job was removed for error in the VE's testimony. Viverette, 13 F.4th at 1318.

Here, the matter must be reversed and remanded under Goode and Viverette. The VE testified that she relied upon SkillTRAN for the job numbers, but the actual SkillTRAN numbers—which are included in the administrative transcript[9]—are not even close to the numbers about which the VE testified. Compare Tr. at 701-04, with Tr. at 852-53. In now defending the Administration's final decision, Defendant points out that the Eleventh Circuit approves the use of the SkillTRAN software, but Defendant fails to address the great discrepancies between the VE's testimony and the printouts of the SkillTRAN software that were submitted at the administrative level. See Def.'s Mem. at 18-19. Moreover, Defendant fails to address Viverette at all. See id. at 15-19.

---

[9]      The ALJ noted that Plaintiff had not, at the time of the Decision, submitted any "evidence demonstrating that . . . [the VE's] testimony concerning th[e] jobs or their prevalence in the national economy is inaccurate." Tr. at 670. In requesting review by the Appeals Council however, Plaintiff's counsel specifically challenged the findings on numbers of jobs as inaccurate and submitted a printout of the relevant jobs from SkillTRAN Job Browser Pro. Tr. at 828, 852-53. The Appeals Council ultimately rejected this assertion without analysis of the alleged inconsistency. Tr. at 617-20.

- 13 -

The Checker I job, much like the job at issue in <u>Goode</u>, appears to be grouped together with multiple other jobs without any extrapolation by the VE as to actual numbers available for just the Checker I job. This is error, and it is not harmless. Although the ALJ wrote about the specific number of jobs available for each position, the ALJ did not determine whether these jobs, singly or in combination, satisfy the "significant numbers in the national economy" requirement. <u>Cf.</u> <u>Gonzalez v. Comm'r of Soc. Sec.</u>, No. 8:22-cv-1403-DNF, 2024 WL 489494, at *7 (M.D. Fla. Feb. 8, 2024) (quotations omitted) (distinguishing <u>Viverette</u> when an ALJ found "each of the proffered jobs, individually, exists in significant numbers in the national economy, and expressly considered the available number of jobs for the proffered positions both singly and in combination"). Because the Court may not substitute its judgment for that of the ALJ to determine whether the jobs in this instance existed in significant numbers in the national economy, reversal and remand is required. <u>See, e.g.,</u> <u>Thomson v. Comm'r of Soc. Sec.</u>, No. 6:23-cv-1758-DNF, 2024 WL 3423008, at *4 (M.D. Fla. July 15, 2024) (reversing and remanding pursuant to <u>Viverette</u> when the ALJ did not make a finding about whether two remaining jobs "taken singly or in combination, existed in significant numbers in the national economy"); <u>Wickersham v. Comm'r of Soc. Sec.</u>, No. 8:22-cv-1403-DNF, 2023 WL

5970918, at *5 (M.D. Fla. Sept. 14, 2023) (same).[10] Moreover, even if the error on the <u>Goode</u> issue were deemed harmless, the large and unexplained discrepancies between the VE's testimony and the actual data provided with respect to <u>all the jobs at issue</u> necessitate further consideration and explanation. Judicial review is frustrated, and the Court is unable to find that the ALJ's Decision is supported by substantial evidence.

## V.   Conclusion

In light of the foregoing, it is

**ORDERED**:

1.    The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

(A)    Reconsider at step five whether jobs exist in significant numbers in the national economy that Plaintiff can perform, specifically resolving the apparent inconsistency between the VE's testimony and actual SkillTRAN data;

---

[10]    There are some differences in opinion among the Judges of this Court about whether remand is required when the record does not demonstrate that a large percentage of jobs are affected by error on the part of the ALJ (as was the case in <u>Viverette</u>). <u>See, e.g.</u>, <u>Denmark v. Kijakazi</u>, No. 8:20-cv-2852-AEP, 2022 WL 831903, at *7-8 (M.D. Fla. Mar. 21, 2022) (finding remand is not required when "a small percentage" of jobs are affected by error and recognizing decisions to the contrary in the Middle District of Florida). Here, given the inconsistencies between the VE testimony and the actual SkillTRAN data cited by Plaintiff across <u>all three jobs</u>, remand is required for further development and findings.

(B)    If appropriate, address Plaintiff's other arguments in this appeal; and

(C)    Take such other action as may be necessary to resolve this claim properly.

2.    The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on August 29, 2024.

JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies to:
Counsel of Record